528 A.2d 203

**William L. KNECHT, Trustee in Bankruptcy for Donald J. Trevino, t/b/a Don's Wood Products**

v.

**CITIZENS & NORTHERN BANK.**

**Appeal of Donald J. TREVINO, d/b/a Don's Wood Products.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1987.

Filed June 23, 1987.

John P. Campana, Williamsport, for appellant.

William F. Campbell, Jr., Wellsboro, for appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

HESTER, Judge:

This is an appeal from an order of September 3, 1986, granting appellee's motion for summary judgment. As we conclude that the pleadings and affidavits on file demonstrate that appellee is not entitled to judgment as a matter of law, we reverse.

Donald Trevino, t/d/b/a Don's Wood Products, instituted this action on May 18, 1984, against Citizens & Northern Bank, appellee. On August 13, 1985, appellee's preliminary objections to that complaint were granted on the basis that it failed to set forth a claim upon which relief could be granted, and Trevino was granted leave to file an amended complaint. In the meantime, the trustee in bankruptcy for Trevino, appellant, intervened as plaintiff.

Appellant filed an amended complaint, which contains the following allegations. In 1981, Trevino operated a pallet-manufacturing and logging business, for which appellee lent him $100,000.00. Of that amount, $88,672.34 had been loaned on the basis of unsecured timber notes. In 1982, Trevino needed an additional $80,000.00, and appellee agreed to lend him $17,500.00, the balance to be financed through the Small Business Administration ("SBA"). Appellee, acting as Trevino's agent, completed the SBA application, but, he alleges, without his knowledge increased the requested amount from $62,500.00 to $151,172.34, the difference to be used to repay to the bank the unsecured timber notes. Although the loan was refused in January, 1983, Trevino alleges he was not informed of the reason for refusal until November of that year. Trevino further alleges that at that time, Joseph Migliorino, an SBA official from Wilkes-Barre, told him that "but for" the increase in the amount requested, the loan would have been approved. In the meantime, Trevino went bankrupt as the result of his failure to obtain financing.

Appellee denied all the material allegations of the amended complaint, contending that Trevino reviewed and signed the application, which it never altered, that it was not acting as Trevino's agent in assisting him with the application, and that the loan was refused due to Trevino's failure to supply adequate financial information to the SBA. Attached as an exhibit to the answer was the letter from the SBA to the bank delineating the reasons for the loan refusal:

The information submitted on January 10, 1983 in connection with your request for SBA to guarantee 90% of a loan to the subject has been carefully reviewed.

Our review of the information submitted reveals many noticeable deficiencies which preclude our accepting the application for processing.

The financial information submitted with the application is without merit. No lender, including this Agency, can perform a thorough and meaningfull [sic] credit analysis of a loan package when such financial information submitted is based on estimates.

Further, the bulk of the request is to refund several loans at your bank. It is not the intention of SBA's lending programs to bail out banks and/or other creditors who are in a position to substain [sic] a loss thereby transferring the potential loss to government hands.

Additionally, considerable supplementary data was not submitted with the application. However, the above areas of concern, i.e. the lack of accurate financial information precludes consideration and we determined that it was not necessary to delay further.

We would not wish to review this request further without audited financial statement and fully completed loan applications.

We regret our inability to be of assistance to you in this matter. Enclosed herewith is the information previously submitted.

Reproduced record at 33a. Appellee also alleged that Trevino received a copy of the SBA letter in January, 1983.

Appellee filed a motion for summary judgment, with the affidavit of Joseph Migliorino attached. Migliorino denied making any direct statements regarding the reason the SBA loan had been refused. He also noted that he would have no knowledge of the reason since the loan was processed through a branch of the SBA with which he had no affiliation. Supplemental reproduced record at SRRA 30–31.

The trial court granted appellee's motion for summary judgment on the basis that appellant failed to provide any support for his allegation that the alleged tortious conduct forming the basis of his cause of action (alteration of the loan amount requested) had caused the harm (loan refusal).

The principles applicable to summary judgments are as follows:

Ordinarily, summary judgment should only be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there exists no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). In passing upon a motion for summary judgment, a court must examine the record in the light most favorable to the non-moving party. It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. Any doubt must be resolved against the moving party.

*Melmed v. Motts,* 341 Pa.Super. 427, 429–30, 491 A.2d 892, 893 (1985) (citations omitted).

Under this standard, we accept as true the following denied, but unrebutted, allegations in appellant's amended complaint. Appellee, while acting as Trevino's agent, and without his knowledge, intentionally increased the requested loan amount for its benefit in order to satisfy the timber notes. Trevino was not made aware of the reasons for the loan denial set forth in the January 17, 1983 letter from the SBA to appellee-bank. He would have provided the omitted financial information requested in the letter had he known of its contents. Finally, Trevino would not have gone bankrupt had he received the SBA financing.

Appellant takes the position that his complaint sets forth a cause of action under general agency principles. Section 378 of the Restatement (2d) of Agency[1] at comment d provides that a gratuitous agent is subject to the same duties of loyalty as that of a paid agent. Those duties include acting solely for the benefit of the principal in all matters relating to the agency. *Id.* at § 387. Agents are subject to liability both for loss caused by breach of duty and for breach of contract in accordance with the principles stated in the Restatement of Contracts. *Id.* at §§ 400, 401.

Thus analyzed, appellee would be liable, as agent, for breach of its duty of loyalty; breach being the act of

---

[1]. Although not addressed by appellant, we recognize that theories of liability contemplated by the Restatement of Agency have been recognized in Pennsylvania. *See Buchanan v. Brentwood Federal Savings & Loan Ass'n,* 457 Pa. 135, 154–55, 320 A.2d 117, 128 (1974); *Onorato v. Wissahickon Park, Inc.,* 430 Pa. 416, 422, 244 A.2d 22, 25 (1968); *Sylvester v. Beck,* 406 Pa. 607, 611, 178 A.2d 755, 757 (1962); *Claughton v. Bear Stearns and Co.,* 397 Pa. 480, 488, 156 A.2d 314, 320 (1959).

altering the loan amount for its benefit and to the detriment of Trevino, the principal.

Appellee counters that whether the cause of action set forth in the amended complaint is analyzed under agency principles or otherwise, the essential fact remains that the record does not permit the inference that the SBA loan would have been granted had the loan amount been the lower amount as alleged by appellant.

Appellant's amended complaint sets forth but one factual allegation regarding this element of the cause of action. Paragraph twelve states, "The plaintiff learned from an SBA official, Joseph Migliorano, that but for the increased amount, the loan would have been granted." By affidavit, Migliorino denied making that exact statement.

His affidavit set forth the additional information that he was a Business Development Specialist with the Wilkes-Barre office of the U.S. Small Business Administration, his primary responsibility being to manage the delivery of training and counselling services for small business and small business persons; that on or about December 8, 1983, he and Mr. Bailey and Dr. Lynch, members of Service Corps of Retired Executives, met with appellant Trevino. They listened to the business problems then being experienced by Trevino and counselled him relative to these problems. Migliorano also averred that Trevino did not have a copy of the complete loan agreement or the letter declining the loan; that based on the information submitted to him, he indicated to Trevino that he could only speculate as to why the loan had been declined, but perhaps one reason might be that the loan application included a request to refinance unsecured loans held by Citizens and Northern Bank; that SBA regulations prohibited a bailout of a bank which is in a position to sustain a loss.

In response to appellee's motion for summary judgment, exhibits and affidavits, appellant provided no affidavits, depositions or exhibits.

The sole issue for our determination is whether the trial court correctly entered summary judgment. As we stated

in *Curry v. Estate of Thompson,* 332 Pa.Super. 364, 368, 481 A.2d 658, 659–60 (1984) (emphasis deleted):

> "In reviewing summary judgment, the court must accept as true all well-pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. To uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law."

*Rybas v. Wapner,* 311 Pa.Super. 50, 457 A.2d 108 (1983). We note initially that

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading but his response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Pa.R.Civ.P. 1035." *Marchese v. Marchese,* 457 Pa. 625, 628, 326 A.2d 321, 322 (1974).

However,

> "Of course, mere failure to file counter affidavits does not assure that summary judgment will be granted to the moving party. The moving party's evidence must clearly exclude any genuine issue of material fact."

*Aimco Imports v. Industrial Valley Bank, etc.,* 291 Pa.Super. 233, 435 A.2d 884, 886 (1981). A motion for summary judgment must be granted in favor of a moving party if the other party chooses to rest on its pleadings, unless a genuine issue of fact is made out in the moving party's evidence taken by itself. *Carollo v. Forty-Eight Insulation, Inc.,* 252 Pa.Super. 422, 381 A.2d 990 (1977).

 The mere fact that a party fails to submit counteraffidavits does not automatically render summary judgment appropriate under Pa.R.Civ.P. 1035(d). It is preliminarily imperative that the moving party's affidavit evidence clearly dispel the existence of any genuine factual issue as

required by Rule 1035(b) and *Marchese v. Marchese, supra.* The exhibits and affidavits submitted by appellee do not satisfy this requirement.

Appellant alleges his application to the Small Business Administration was to be for a loan of $62,000.00, and that the amount was increased by an officer of the bank to $150.000.00 without his knowledge or consent. Appellee denies this.

Appellant alleges the $88,000.00 addition to the loan application was to be used by appellee-bank to repay his unsecured timber notes, and that this was one reason the application was turned down. Appellee denies this.

The SBA, by letter to appellee-bank dated January 17, 1983, advised that the SBA was precluded from accepting the application for processing for several reasons. Paragraph four of the letter states,

> Further, the bulk of the request is to refund several loans at your bank. It is not the intention of SBA's lending programs to bail out banks and/or other creditors who are in a position to substain [sic] a loss thereby transferring the potential loss to government hands.

The balance of the letter sets forth the need for accurate financial information, audited financial statement, fully completed loan applications, and a meaningful credit analysis. The application could not be reviewed without this information. The letter does not indicate that it was copied to appellant. He contends he never received a copy, but learned in February, 1983, that the loan had been refused but was never told the reason, and was thus denied the opportunity to meet the requirements set forth in the letter and submit an amended application. Appellee alleges he did receive a copy of said letter.

Appellant alleges that appellee was acting as his fiduciary agent and breached the trust imposed upon it. Appellee denies this.

Appellant alleges that he learned from Joseph Migliorino that but for the increased amount, the loan would have been granted. Appellee submitted an affidavit of Mr. Migliorino

wherein he stated he met with appellant on December 1, 1983, along with two members of the Service Corps of Retired Executives at which time they listened to appellant's business problem, and provided him with counsel. He stated appellant did not have a copy of a complete loan application submitted to the S.B.A. nor the letter declining the loan. Mr. Migliorino stated he never told appellant, "but for the increased amount, the loan would have been granted" or make any similar statement.

In his affidavit, Mr. Migliorino further said: "I stated that perhaps one reason for the decline might be that, according to Mr. Trevino, the loan application included a request to refinance unsecured loans held by Citizens and Northern Bank. I explained to Mr. Trevino that SBA regulations prohibit a 'bailout' of a bank which is in a position to sustain a loss."

All of the foregoing contradictions demonstrate the existence of genuine issues of material fact.

We are of the opinion that the within situation is more appropriately governed by the maxim that doubtful cases should go to trial. *Gaul v. City of Philadelphia,* 384 Pa. 494, 121 A.2d 103 (1956).

Reversed and remanded for further proceedings consistent with this opinion.