# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**November 17, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Mark C. Busack,**
**Plaintiff Below, Petitioner**

**vs)   No. 16-0718** (Ohio County 16-C-46)

**West Rentals, Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mark C. Busack, pro se, appeals the June 24, 2016, order of the Circuit Court of Ohio County awarding summary judgment to Respondent West Rentals, Inc., in his civil action that sought the return of personal property left at the real property that he was formerly renting or its monetary value. Respondent, by counsel David L. Wyant, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a federal inmate and a former business owner. For a number of years, petitioner rented a property known as 260 Bethany Pike, Wheeling, West Virginia, from respondent. Petitioner operated a fraudulent scheme from 260 Bethany Pike, for which he later pled guilty to five offenses under the United States Code.[1] *Busack v. United States*, Civil Action No. 5:15CV151, 2016 WL 7441680, at *1 (N.D.W.Va. December 27, 2016) (unpublished) (denying post-conviction relief). Consequently, petitioner is currently serving a sentence of thirty-five months of incarceration imposed by the United States District Court for the Northern District of West Virginia. *Id.*

In June of 2015, by which time petitioner was awaiting sentencing in his federal criminal case, the parties agreed that petitioner would continue to rent the first floor of 260 Bethany Pike ("the premises") from June 1, 2015, to May 31, 2016, for a delicatessen business for $1,080 per

---

[1]We take judicial notice of the record in petitioner's federal criminal case, No. 5:14CR54.

1

month. The lease that petitioner signed and returned to respondent's offices provided for a $125 late fee if he failed to make the monthly rent payment on time. The lease further provided that the failure to pay rent would cause petitioner to be in default of his obligations thereunder. As for the termination of petitioner's tenancy, the lease language was as follows:

> Provided [petitioner] is not in default at the termination of this lease, [petitioner] shall have the right to remove all of [his] property and fixtures on the demised [p]remises provided that such remov[al] is accomplished prior to the end of the term of any renewal or extension thereof and further provided that any damage to the demised [p]remises occasioned by said removal is fully repaired. All of [petitioner]'s personal property not removed from the demised [p]remises when [petitioner] leaves the [p]remises shall be conclusively presumed to have been abandoned by [petitioner] and shall forthwith become [respondent]'s property.

Petitioner became incarcerated as a result of his federal convictions on October 15, 2015, but paid his rent for October of 2015. However, by letter dated November 30, 2015, respondent informed petitioner that the rent for November of 2015 had not been paid because his check was returned to respondent pursuant to a stop payment order. Consequently, respondent found petitioner in default of his obligation to pay rent. Respondent stated that petitioner must pay rent owed for both November and December of 2015, plus the $125 late fee for the November rent, by December 15, 2015, or he should consider the letter as a notice of eviction.

Petitioner replied to respondent by letter dated December 12, 2015. Petitioner stated that he would be "unable to meet [his] rent obligations to [respondent] by December 15, 2012." Petitioner requested an opportunity to have his personal property (including business equipment) retrieved from the premises. According to petitioner, his power of attorney was available to retrieve his personal property if respondent was willing to provide that person with the keys to the premises.

However, by letter dated February 3, 2016, respondent informed petitioner that, when it contacted the person identified as his power of attorney, "she informed [respondent] that she would not sign, nor be responsible for the removal of [his] items." The lack of a person authorized by petitioner to retrieve his personal property is evidenced by a request that he made to Citizens Bank ("the bank") in January of 2016. In a January 17, 2016, letter to the bank, which had a security interest in certain business equipment, petitioner requested that the bank "contact [respondent] and make arrangements to remove the inventory and dispose of it properly." In making this request, petitioner noted that the Wheeling-Ohio County Health Department was "concerned with the proper disposal of [the] remaining foodstuffs." The record reflects that the bank made no attempt to remove any of petitioner's personal property from the premises. Eventually, respondent disposed of the property that petitioner left at the premises in May of 2016.

On February 11, 2016, petitioner filed a civil action in the Circuit Court of Ohio County alleging that respondent denied him a reasonable opportunity to retrieve his personal property.[2] As

---

[2]When he filed his civil action, petitioner attempted to assert certain claims on behalf of his (Continued . . .)

relief, petitioner sought the return of his personal property or its monetary value (which, in his view, included estimated lost profits from his business interests).[3] To his complaint, petitioner attached respondent's November 30, 2015, letter finding him in default and his December 12, 2015, letter to respondent wherein he acknowledged the inability to meet his rent obligations.

Respondent filed his answer to the complaint on March 9, 2016. On June 24, 2016, respondent filed a motion for summary judgment attaching several documents to its motion, which included the following: (1) the lease signed by petitioner; (2) petitioner's January 17, 2016, letter to the bank requesting that it remove certain items of his personal property from the premises and properly dispose of it; and (3) respondent's February 3, 2016, letter informing petitioner that the person identified by him as his power of attorney refused to retrieve his personal property. By order entered on June 24, 2016, the circuit court awarded summary judgment to respondent, finding that petitioner had no claim against it under the plain and unambiguous language of the lease.[4]

Petitioner now appeals from the circuit court's June 24, 2016, order, awarding respondent summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Rule 56(c) of the West Virginia Rules of Civil Procedure provides that summary judgment shall be granted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In syllabus point 4 of *Painter*, we held that "[s]ummary judgment is appropriate where the record

---

corporation, Major Savings, Inc. The circuit court dismissed all such claims in its June 24, 2016, order, based on this Court's decision in *Shenandoah Sales & Service, Inc. v. Assessor of Jefferson County*, 228 W.Va. 762, 767-68, 724 S.E.2d 733, 738-39 (2012), that a corporation can be represented in a circuit court only by a licensed attorney. *See also West Virginia State Bar v. Earley*, 144 W.Va. 504, 526-27, 109 S.E.2d 420, 435 (1959) (same). To the extent that petitioner appeals the dismissal of his corporation's claims, we affirm the dismissal of those claims as it was correct as a matter of law.

[3]In addition to the return of his personal property or its monetary value, petitioner stated that he was entitled to $29,000 in damages. However, petitioner did not explain how he arrived at this figure.

[4]Petitioner filed a response to the motion for summary judgment on July 5, 2016. Consequently, petitioner contends that the circuit court erred in granting respondent's motion on the same day it was filed. In *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995), we found that a party opposing a motion for summary judgment should be allowed an adequate time to respond. However, under the facts and circumstances of this case, assuming arguendo that the circuit court's failure to wait for a response by petitioner constituted error, we find that any such error was harmless for the reasons explained below. *See* Rule 61, W.V.R.Civ.P. (providing that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties").

3

taken as a whole could not lead a rational trier of fact to find for the nonmoving party." 192 W.Va. at 190, 451 S.E.2d at 756.

On appeal, petitioner contends that the circuit court erred in relying on the lease to award respondent summary judgment. "A lease is a contract for the possession and profits of lands and tenements on the one side, and the recompense or rents on the other." *Headley v. Hoopengarner*, 60 W.Va. 626, 635, 55 S.E. 744, 748 (1906) (internal quotations and citations omitted). In *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 287, 737 S.E.2d 550, 556 (2012), we reiterated that "[t]he elements of a contract are an offer and an acceptance supported by consideration."

Petitioner admits that he was renting the premises from respondent. Petitioner contends only that he should not be held to the terms of the written lease because he never received a copy back, signed by respondent, after he signed the lease and returned it to respondent's offices. Respondent counters that the absence of a copy of the lease signed by it is immaterial given that the parties acted consistent with the lease's terms. We agree with respondent.

In *Bailey v. Sewell Coal Co.*, 190 W.Va. 138, 140-41, 437 S.E.2d 448, 450-51 (1993), we found that "[b]oth the offer and acceptance may be by word, act[,] or conduct that evince the intention of the parties to contract" and that the meeting of parties' minds "may be shown by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied." Petitioner signed the lease, returned it to respondent's offices, occupied the premises, and paid rent through October of 2015. In his December 12, 2015, letter to respondent, petitioner acknowledged that he was no longer able to meet his rent obligations.

For its part, respondent leased the premises to petitioner and collected rent. Moreover, when there was no rent paid for November of 2015, respondent charged petitioner a $125 late fee for that month in accordance with the lease's terms. The late fee being charged is evidenced by respondent's November 30, 2015, letter, which petitioner attached to his complaint. Though petitioner's complaint set forth several allegations regarding respondent's conduct, he never alleged that the $125 late fee was improperly charged. Therefore, we find that there is no genuine issue of material fact that the lease that petitioner signed and returned to respondent's offices governed the parties' conduct.

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981) (quoting Syl. Pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)). We find that the plain and unambiguous language of the lease did not provide petitioner with a right to retrieve his property from the premises given that he was in default of his obligation to pay rent, as evidenced by his December 12, 2015, letter to respondent. Moreover, the lease further provided that property left at the premises at the end of the tenancy was "conclusively presumed to have been abandoned."

Even so, respondent attempted to facilitate the retrieval of petitioner's personal property during December of 2015. However, when respondent contacted the person that petitioner identified as his power of attorney and the person who would retrieve that property, "she informed

4

[respondent] that she would not sign, nor be responsible for the removal of [his] items." The lack of a person authorized by petitioner to retrieve his personal property is evidenced by his January 17, 2016, letter to the bank requesting that his creditor "contact [respondent] and make arrangements to remove the inventory and dispose of it properly." Therefore, we find that no rational trier of fact could find in petitioner's favor because (1) the plain and unambiguous language of the lease did not provide petitioner with a right to retrieve his property from the premises given his default; and (2) even though the lease did not require it to do so, respondent attempted to facilitate the retrieval of petitioner's personal property during December of 2015, but he had no one willing and able to retrieve his property.[5] Accordingly, we conclude that the circuit court properly awarded respondent summary judgment.[6]

For the foregoing reasons, we affirm the circuit court's June 24, 2016, order, awarding summary judgment to respondent.

Affirmed.

**ISSUED:** November 17, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[5] Although disputed by petitioner, respondent asserts that it attempted to facilitate the retrieval of his property through May of 2016. However, because the lease did not provide petitioner with a right to retrieve his property from the premises given his default, respondent never had a duty to give him an opportunity to do so. That respondent did attempt to facilitate the retrieval of petitioner's property during December of 2015 is merely an additional reason why no rational trier of fact could find in his favor.

[6] We reject petitioner's argument that his action could proceed under the Uniform Commercial Code, West Virginia Code §§ 46-1-101 through 46-10-104, because, as respondent notes, it never claimed to have a security interest in petitioner's personal property.

5