# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JEFFREY ORSBORN and SANDRA ORSBORN,**
**Plaintiffs Below, Petitioners**

**v.) No. 24-ICA-218**        (Cir. Ct. of Marion Cnty. Case No. CC-24-2019-C-94)

**THE CITY OF MORGANTOWN and**
**BENEFIT ASSISTANCE COMPANY, LLC,**
**Defendants Below, Respondents**

**FILED**
**February 28, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Jeffrey Orsborn and Sandra Orsborn (collectively, "Orsborns") appeal the Circuit Court of Marion County's March 28, 2024, final summary judgment order dismissing the Orsborns' declaratory judgment action against Respondent The City of Morgantown ("City of Morgantown") and Respondent Benefit Assistance Company, LLC ("BAC"). The Orsborns also appeal the Circuit Court of Marion County's April 18, 2024, order denying the Osborns' motion to set aside the March 28, 2024, order. The City of Morgantown and BAC filed responses.[1] The Orsborns filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the evening of October 2, 2017, Mr. Orsborn was struck by a motor vehicle driven by Patricia Vincent while crossing Route 310 in Fairmont, West Virginia. Mr. Orsborn suffered major injuries including a fractured pelvis, broken coccyx, fractured spine, collapsed left lung, broken right leg, broken right shoulder and collarbone, contusions, severe bruises and loss of blood. Mr. Orsborn was hospitalized for fifty-five days and amassed healthcare costs exceeding $200,000.00.

As an employee of the City of Morgantown, Ms. Orsborn and her spouse, Mr. Orsborn, participated in the City of Morgantown Group Health Plan ("Plan"). The Orsborns received health care benefits under the Plan, including benefits that paid for Mr.

---

[1] The Orsborns are represented by D. Conrad Gall, Esq. The City of Morgantown is represented by Ryan P. Simonton, Esq., and Matthew D. Elshiaty, Esq. BAC is represented by Jill E. Hall, Esq.

1

Orsborn's injuries. The City of Morgantown is the Plan sponsor, and the Plan is self-funded, therefore, the City of Morgantown directly paid for the health care benefits Mr. Orsborn received. The Plan excludes coverage for injuries caused by the negligent or wrongful acts of third parties, and it provides the City of Morgantown the right of recovery and subrogation for any payments made by third parties related to benefits paid by the Plan. Specifically, the Plan provides:

> The Plan shall have, and the Participant hereby grants to the Plan, an equitable lien on any proceeds recovered from the third party or insurer equal to the amount of benefits paid or provided by the Plan.
>
> . . . .
>
> To the extent of the benefits provided by the Plan, the Plan is subrogated to all of the Participant's rights against any party. . . .

Consequently, when a Plan participant recovers damages from a third party for injuries for which the Plan has paid medical claims, the City of Morgantown has a lien on the proceeds recovered from the third party. The Plan also expressly waives application of the "made-whole" doctrine. In relevant part, the Plan states, "The Plan shall be subrogated to such rights of the Participant regardless of whether the Participant has been made whole or fully reimbursed by the third party for his/her damages." The Orsborns agreed to the Plan's equitable lien, subrogation, and made-whole waiver provisions by accepting the Plan's healthcare benefits because the Plan provides that "Participant understands and acknowledges that acceptance of the coverage afforded under this Plan means the Participant is accepting the terms and conditions of the Plan, including but not limited to the reimbursement and subrogation provisions of this Plan."

The City of Morgantown retained the services of BAC to process claims made by participants of the Plan. BAC's role is clerical; it receives claims incurred by Plan participants and uses the City of Morgantown's funds to pay such claims. BAC has no control over the administration, interpretation, or application of the Plan.

Soon after the accident, BAC sent a subrogation letter and subrogation agreement to the Orsborns. On November 13, 2017, Ms. Orsborn signed the subrogation agreement reaffirming the City of Morgantown's subrogation and recovery rights in the event of payment(s) received from a third-party. The parties to the subrogation agreement are the Orsborns and the City of Morgantown.[2]

---

[2] BAC sent the subrogation letter and subrogation agreement, but it provides that rights to subrogation are the City of Morgantown's.

In 2018 and 2019, the Orsborns' attorney sent several letters to BAC requesting that BAC waive its subrogation claim/lien against the Orsborns. Even though the City of Morgantown held the subrogation claim/lien, the letters were sent to BAC. BAC did not respond to these requests to waive subrogation. The Orsborns' attorney then notified BAC that because of BAC's failure to respond, BAC waived its subrogation claim.

In 2019, the Orsborns filed the underlying lawsuit in the Circuit Court of Marion County against Ms. Vincent for the injuries caused by her alleged negligence.[3] Ms. Vincent disputed liability for the accident because: (1) Mr. Osborn was highly intoxicated at the time of the accident; (2) the accident happened at dusk and outside of a crosswalk; and (3) both sides' experts agreed that Ms. Vincent probably was operating her vehicle appropriately.

At a 2021 mediation, the Orsborns and Ms. Vincent reached an agreement to settle the claims between them for $70,000.00, to be paid by Ms. Vincent's motor vehicle insurance carrier, Westfield Insurance. However, Westfield would not agree to pay the $70,000.00 settlement amount directly to the Orsborns or their attorney until the City of Morgantown waived its subrogation claim/lien. The City of Morgantown and BAC did not participate in the mediation and were not parties to the agreement to settle. Following the mediation, counsel for the Osborns requested that BAC issue a letter waiving its subrogation claim/lien but BAC did not respond.

In June 2022, the Orsborns filed a new lawsuit in the Circuit Court of Monongalia County against the City of Morgantown and BAC seeking a declaration that the City of Morgantown was not entitled to enforce its subrogation claim/lien because the Orsborns would not be made whole by their negotiated settlement. Plaintiffs voluntarily dismissed the 2022 Monongalia County action, but on February 2, 2023, filed an amended complaint for declaratory judgment against the City of Morgantown, BAC, and Ms. Vincent in the 2019 Marion County case. The Orsborns filed a motion for summary judgment requesting a determination that the City of Morgantown and BAC do not have subrogation rights because the Orsborns would not be made whole by their negotiated settlement. The City of Morgantown filed its own motion for summary judgment contending that the Orsborns expressly waived application of the made-whole doctrine as permitted by West Virginia law. On the same date, BAC filed a motion for summary judgment asserting that as claims processor for the Plan, BAC does not have any subrogation rights under the Plan and cannot provide the relief sought by the Orsborns. On March 28, 2024, following a hearing on the parties' motions, the circuit court entered its Order Granting Morgantown's Motion for Summary Judgment; Order Granting BAC's Motion for Summary Judgment; and Order Denying Plaintiff's Motion for Summary Judgment. The circuit court ruled, inter alia, that the Plan contains an express waiver of the made whole doctrine, and that the City of

---

[3] The City of Morgantown and BAC were not added as parties to the 2019 lawsuit until 2022.

Morgantown holds an equitable lien on the Orsborns' $70,000.00 settlement proceeds. The circuit court also ruled that the subrogation agreement did not modify the express terms of the Plan, noting that the subrogation agreement neither created new obligations based on valid consideration nor modified or extinguished the clear and unambiguous subrogation provisions in the Plan document. The Orsborns moved to set aside the March 28, 2024, order but the motion was denied in the circuit court's April 18, 2024, order. The Orsborns appeal both orders.

This appeal involves review of two related but distinct circuit court orders. The first order consists of a dismissal of a claim resulting from the grant of a motion for summary judgment in accord with Rule 56 of the West Virginia Rules of Civil Procedure. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). The second order involves the denial of the Orsborns' Rule 60(b) motion to set aside the order dismissing the case. The Supreme Court of Appeals of West Virginia ("SCAWV") has explained that "although our review of a lower court's denial of a Rule 60(b) motion is generally limited and deferential, where the Rule 60(b) motion challenges the trial court's earlier dismissal of a case our review focuses on the substantive standard of review applicable to the dismissal when the appeal period has not expired on the dismissal order." *Choice Lands, LLC v. Tassen*, 224 W. Va. 285, 289, 685 S.E.2d 679, 683 (2008) (per curiam). Here the appeal period for the circuit court's March 28, 2024, order had not yet expired. Consequently, since the controlling issue on appeal is dismissal of the Orsborns' claims resulting from summary judgment, we proceed to review of the matter de novo.

On appeal, the Orsborns list five assignments of error: (1) the circuit court failed to find BAC was the agent of the City of Morgantown; (2) the circuit court failed to find that the City of Morgantown was bound by the actions of BAC, as its agent; (3) the circuit court failed to find that language in the subrogation agreement sent by BAC modified the Plan regarding the Orsborns' waiver of the right to be made whole; (4) the circuit court failed to find that the language in the subrogation agreement conflicted with the language contained in the Plan; and (5) the Orsborns are entitled to be made whole before the City of Morgantown can enforce its subrogation rights.

The Orsborns' assignments of error are interrelated, and we will address these assignments of error together. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n. 2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues).

The Orsborns essentially argue on appeal: (1) that BAC had the actual or apparent authority to modify the terms of the Plan and (2) that the subrogation letter and subrogation

agreement sent by BAC did in fact modify the subrogation and made-whole doctrine waiver provisions of the Plan. We find these arguments unpersuasive.

First, the Plan expressly provides that BAC does not have authority to modify the terms of the Plan. As the Plan's claims processor, BAC's role under the Plan is clerical only. It processes and pays the medical claims of Plan participants and processes forms. The terms of the Plan provide that BAC neither has control over Plan administration nor the authority to modify its terms. The Orsborns argue that BAC was an agent of the City of Morgantown because BAC sent the subrogation letter and subrogation agreement to the Orsborns and because the subrogation letter and subrogation agreement provide that in the event of recovery from a third party, payments for the City of Morgantown's subrogation claim are sent to BAC. We disagree.

"Where the provisions of an insurance policy contract are clear and unambiguous, they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 1, *Arndt v. Burdette,* 189 W. Va. 722, 434 S.E.2d 394 (1993) (internal citations omitted). Here, the Plan clearly and unambiguously provides that BAC does not have authority to modify the terms of the Plan. The fact that BAC sent the subrogation letter and subrogation agreement do not make these clear terms ambiguous. We therefore find that BAC had no authority, actual or apparent, to modify the terms of the Plan and was not acting as the City of Morgantown's agent.

Secondly, the City of Morgantown's subrogation rights were not modified or extinguished by the contents of the subrogation letter and subrogation agreement. The Plan provides that the City of Morgantown has a subrogation claim/lien against proceeds recovered from a third party equal to the amount of benefits paid by the Plan. The Plan states in relevant part:

> . . .if the Plan pays for or provides benefits for such an injury or sickness caused by a third party, the Participant shall promptly repay to the Plan the amount of benefits paid on his or her behalf out of any recovery made from the third party (or insurer) until the Plan has been fully reimbursed for benefits it paid for or provided.

> The Plan shall have, and the Participant hereby grants to the Plan, an equitable lien on any proceeds recovered from the third party or insurer equal to the amount of benefits paid or provided by the Plan. . . . This lien applies:

> *regardless of whether the Participant has been made whole or fully reimbursed by the third party for his or her damages;

> . . . .

5

To the extent of the benefits provided by the Plan, the Plan is subrogated to all of the Participant's rights against any party. . . .The Plan shall be subrogated to such rights of the Participant regardless of whether the Participant has been made whole or fully reimbursed by the third party for his/her damages. . . .

The subrogation agreement, signed by Ms. Orsborn, provides in relevant part:

To the extent that CITY OF MORGANTOWN shall have paid on behalf of an Employee or Dependent, pursuant to the provision of the Plan because of loss or damage for which the Employee or Dependent may have a cause of action against a third party who caused this loss or damage, this Plan shall be subrogated to the extent of such payment and all recovery by the Plan by the Employee as a condition of the payment of such money by the Plan [sic].

The Orsborns assert that the absence of a statement in the subrogation agreement reaffirming the Orsborns' waiver of the right to be made whole invalidates the made-whole doctrine waiver terms in the Plan. Relying on *Provident Life and Acc. Ins. Co. v. Bennett*, 199 W. Va. 236, 483 S.E.2d 819 (1997) in support of this argument, the Orsborns cite language in the opinion that "subrogation can either be modified or extinguished through express contractual language, or by an action of the surety which is inconsistent with the right of subrogation[.]" *Id.* at 239, 483 S.E.2d at 822. In *Provident Life*, the plaintiff argued the insurer was estopped from asserting subrogation rights because its representative stated that subrogation did not apply and because in that case the policy provided that subrogation rights required execution of a separate contract. *Id.* However, neither circumstance applies to the case at hand. The Orsborns do not contend that BAC represented to them that the City of Morgantown did not have a subrogation claim against settlement proceeds. To the contrary, the subrogation agreement confirms the City of Morgantown's subrogation claim. Also, the Plan terms provide that a separate agreement is not required for the City of Morgantown to exercise its subrogation rights. We find that the subrogation letter and subrogation agreement merely acknowledged the City of Morgantown's right to subrogation pursuant to the Plan; it neither modified nor extinguished any of the Plan's provisions regarding subrogation and waiver of the made-whole doctrine.

For the foregoing reasons, we find that BAC had no actual or apparent authority to modify the terms of the Plan and that the Orsborns waived their rights to be made whole with respect to the City of Morgantown's subrogation claim/lien. Further, the City of Morgantown holds a subrogation claim/lien, to the extent of benefits paid, against any recovery the Orsborns receive from a third party related to the subject action.

Accordingly, we affirm the Circuit Court of Marion County's April 18, 2024, order and its March 28, 2024, final summary judgment order.

6

Affirmed.

**ISSUED:** February 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White